UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| REBECCA BLOYED, | ) ) | |
| Plaintiff, | ) ) | 2:07-cv-01690-JWS |
| vs. | ) ) | ORDER AND OPINION |
| AFFILIATED EMPLOYERS HEALTH & WELFARE TRUST PLAN; ACTUARIAL ADMINISTRATORS, INC., an Illinois corporation, *et al.*, | ) ) ) ) ) ) | [Re: Motions at Docket 66 and 69] |
| Defendants. | ) ) | |

## I. MOTIONS PRESENTED

At docket 66, plaintiff Rebecca Bloyed ("Rebecca") moves for summary judgment on Count I of her complaint. At docket 68, defendants Affiliated Employers Heath & Welfare Trust Plan (the "Plan") and Actuarial Administrators, Inc. ("AAI" or "Plan Administrator") (collectively "defendants") oppose Rebecca's motion. At docket 69, defendants cross-move for summary judgment on Count I. At docket 71, Rebecca replies in support of her motion. At docket 72, Rebecca controverts portions of defendants' statement of facts filed in response to her motion. However, Rebecca does

not otherwise respond to defendants' cross-motion for summary judgment. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

Paul Bloyed's ("Paul") employer, Young Power Equipment Company ("Young Power"), joined the Plan by signing a Joinder Agreement on December 31, 1999. The Plan, which is a section 419 multiple employer plan, provides a death benefit to the participant employees of a member employer equal to 17.45 times the participant employee's annual salary as set forth in the Joinder Agreement.[1] Under the Joinder Agreement, an employee is eligible to become a participant in the Plan after he has attained the age of 21 and has been employed with a member employer for 24 months.[2]

Pursuant to Article IV of the Plan, an eligible employee may become a participant in the Plan when the Plan Administrator has received appropriate documents "and the Plan Administrator has obtained coverage for the Employee under one of the Contracts issued to the Trust."[3] There is one alternative to the acquisition of coverage: "Notwithstanding the [requirement for insurance coverage], the Plan Administrator **may, in the exercise of its sole discretion**, cause the Plan to provide a death benefit to an Employee who is uninsurable or for whom the Plan Administrator is unable to obtain

---

[1] Docket 67-2 at 4.

[2] *Id.*

[3] Docket 67-3 at 7.

coverage . . . ."[4] The amount of coverage is to be determined by the Plan Administrator in the exercise of its sole discretion, provided that the "Plan Administrator shall make such determination on a basis uniformly applied to all eligible employees who are uninsurable, or for whom the Plan Administrator is unable to obtain sufficient coverage . . . ."[5]

In December 2002, Paul became eligible to become a participant in the Plan. Paul submitted his insurance application to AAI, who forwarded the application to Baltimore Life Insurance Company ("Baltimore Life"). Baltimore Life denied Paul's application on July 14, 2003. AAI resubmitted Paul's application to Baltimore Life and sought to obtain a lesser amount of guaranteed coverage for Paul. Baltimore Life again rejected Paul's application on October 29, 2003. Neither did the Plan Administrator cause the Plan to provide a death benefit for Paul. Thus, it is defendants' view that Paul did not become a participant in the Plan. Although Rebecca claims that neither Baltimore Life nor AAI informed Young Power or Paul that his application had been denied, a letter dated December 18, 2003, from AAI to Young Power included a table showing that Paul and several other employees possessed no current death benefit.[6]

Assuming that Paul was adequately insured, Paul and Rebecca did not obtain any additional life insurance for Paul. Paul died in March 2006. Rebecca immediately notified Young Power of Paul's death. In the week following Paul's death, Randy

---

[4]*Id.* (Emphasis added).

[5]*Id.*

[6]Docket 70, Exhibit 3 at Bloyed000159-60.

-3-

Sutton, Young Power's president, informed Rebecca that he had contacted the Plan regarding Paul's life insurance and had learned that Paul had been denied coverage in 2003. Rebecca nonetheless submitted a claim to Baltimore Life, which was denied in June 2006 because it had not issued a policy on Paul's life. In addition, Young Power's counsel, Wesley S. Loy, sent a letter dated May 4, 2006, to AAI which posed various questions regarding Young Power's uninsured employees, including Paul.[7] AAI responded to Mr. Loy's inquiries on May 24, 2006, and, after an additional exchange of letters, produced the entire administrative record to a Chicago attorney retained by Mr. Loy.[8] Rebecca subsequently retained her own counsel who submitted a claim to AAI.[9] AAI denied Rebecca's claim on the ground that Paul was not a participant in the Plan. The present lawsuit followed.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[10] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but

---

[7] Docket 70, Exhibit 2 at Bloyed000138-142.

[8] Docket 70, Exhibit 5.

[9] Docket 67-2 at 32.

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

need not produce evidence negating that claim.[11]  Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[12]  The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[13]

## IV.  DISCUSSION

ERISA § 502(a)(1)(B) permits participants or beneficiaries to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[14]  ERISA defines "participant" as follows:

> "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."[15]

While it is undisputed that Paul was eligible to become a participant under the terms of the statute, this court held in its order at docket 28 that Paul was not a participant "under

---

[11] *Id.* at 325.

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[13] *Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

[14] 29 U.S.C. § 1132(a)(1)(B).

[15] *Id.* § 1002(7).

the language of the Plan in the context of having been issued a life insurance policy under the terms of the Plan." The question now before the court is whether Paul would have been a participant in the Plan had AAI not abused its discretion by declining to cause the Plan to provide Paul benefits under the Plan.

Rebecca argues that AAI abused its discretion when, upon receiving notice from Baltimore Life that Paul was uninsurable, it failed to place Paul with another insurer, self-fund Paul's insurance benefits or otherwise notify Paul or his employer that he was not insured. Because of AAI's failure to obtain insurance or inform Paul of his lack of insurance, Rebecca argues, AAI's discretionary decision not to pay her claim was arbitrary and capricious. AAI counters that its' decision not to pay Rebecca's claim was reasonable in light of the fact that Paul was uninsured and hence not a participant in the Plan. Without insurance, AAI argues, the Plan does not have the ability to pay benefits. AAI further argues that it used its best efforts to obtain coverage for Paul. Finally, AAI asserts that it spent more than a year after Paul's death considering whether the Plan was in a position to pay a benefit to Rebecca.

Where, as here, discretionary power is conferred upon a plan administrator, a deferential abuse of discretion standard of review is appropriate.[16] "Abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest."[17] However, where a plan gives discretion to a plan administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in

---

[16] *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

[17] *Abatie v. Alta Health & Life Ins Co.*, 458 F.3d 955, 965 (9th Cir. 2006).

determining whether there is an abuse of discretion.[18]  Rebecca does not assert, and the court does not conclude, that AAI was operating under a conflict of interest.[19]  In the absence of apparent conflict, deferential review entitles a district court to "set aside the administrator's discretionary determination only when it is arbitrary and capricious."[20]  An administrator's decision is arbitrary and capricious if it is not "grounded on *any* reasonable basis."[21]  "[K]ey factors in determining whether or not a trustee has abused discretion include 'the motives of the trustee in exercising or refraining from exercising [a power granted to the trustee]; [and] the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.'"[22]  An administrator may be found to have abused its discretion where its decision is either substantively or procedurally arbitrary and capricious.[23]

Here, Rebecca has failed to establish that AAI abused its discretion.  Rebecca has not established that AAI's failure to directly notify Young Power or Paul of Baltimore Life's denial of coverage was arbitrary and capricious.  Indeed, it is clear that Young

---

[18]*Glenn*, 128 S. Ct. at 2348.

[19]As Plan Administrator, AAI had discretion to "cause the Plan to provide a death benefit to an Employee who is uninsurable or for whom the Plan Administrator is unable to obtain coverage under one of the Contracts issued to the Trust."  Docket 67-3 at 7.  Because AAI's discretionary power is not linked to any "particular" funds in its possession, *see* docket 28 at 14, but rather funds in the Plan's possession, the court concludes that AAI's relationship was not of the sort that would require the court alter its review of AAI's decision.  *See Glenn*, 128 S. Ct. at 2351.

[20]*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004), *abrogated in part by Abatie*, 458 F.3d at 967.

[21]*Jordan*, 370 F.3d at 875 (emphasis in original).

[22]*Abatie*, 458 F.3d at 967 (quoting Restatement (Second) of Trusts § 187 cmt.d (1959)).

[23]*Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1221 (9th Cir. 2008).

Power was on notice of Baltimore Life's denial when it received AAI's December 18, 2003 letter, which indicated that Paul, among others, was not insured. Rebecca's other argument - that AAI should have self-funded Paul's death benefit after Baltimore Life denied his application - is similarly meritless. The court cannot conclude on the record that AAI abused its discretion when it failed to self-fund Paul's death benefit. The record does not reveal whether AAI considered self-funding Paul's death benefit after Baltimore Life denied Paul coverage. However, the Plan does not require AAI to provide an uninsurable employee with such a benefit. Although the Plan does require AAI to make "such determination on a basis uniformly applied to all eligible Employees who are uninsurable or for whom the Plan Administrator is unable to obtain sufficient coverage under one of the Contracts issued to the Trust," Rebecca has presented no evidence of non-uniform application to Paul's claim.[24] The essence of such a claim would turn on evidence that AAI had self-funded the death benefits of similarly situated employees, but did not follow similar procedures in refusing to self-fund Paul's death benefits. But it is undisputed that "the Plan has never paid a death benefit without insurance coverage in place."[25] Rebecca has not offered any contrary evidence. On the record before the court, there are no disputed issues of fact material to the determination that defendants are entitled to judgment as a matter of law.

---

[24] Docket 67-3 at 7.

[25] Docket 69 at 9.

## V.  CONCLUSION

For the reasons set forth above, Rebecca's motion at docket 66 is **DENIED**. Defendants' motion at docket 69 is **GRANTED**.  Count I of plaintiff's complaint is therefore dismissed.  The Clerk is directed to please enter judgment accordingly.

DATED at Anchorage, Alaska, this 16th day of June 2009.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE